## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## CHAMPAIGN DIVISION

| | | |
|---|---|---|
| Rebecca Kistler Ramey, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 24 cv 2194 |
| | ) | |
| Board of Education of Champaign Unit 4 | ) | |
| School District; Dr. Sheila E. Boozer, in her | ) | |
| Individual Capacity; Kenneth L. Kleber, in | ) | |
| his Individual Capacity; and Dr. Laura | ) | |
| Taylor, in her Individual Capacity; | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' ANSWER TO
## COMPLAINT AT LAW AND AFFIRMATIVE DEFENSES

Defendants Board of Education of Champaign Unit 4 School District ("Board"), Dr. Shelia Boozer ("Boozer"), Kenneth Kleber ("Kleber") and Dr. Laura Taylor ("Taylor"), by their attorneys Franczek P.C., hereby respond to Plaintiff's Complaint at Law as follows:

### Nature of the Action

1.      This action is brought to remedy unlawful discrimination practices and retaliation as stated under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq,* and for redress for violations of Plaintiff's right of freedom of familial association through the First and/or Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983. Plaintiff seeks injunctive relief including, but not limited to: back pay and reinstatement to her prior position, other than make-whole relief, compensatory damages, and punitive damages against Defendant. Plaintiffs [sic] declaratory judgment and injunctive relief as well as damages.

**Answer:**

Defendants admit that Plaintiff purports to bring an action for discrimination and retaliation under Title VII and redress for violations of the First and Fourteenth Amendments pursuant to 42. U.S.C. §1983 but deny that they have violated any statute or the common law and therefore deny all remaining allegations in Paragraph 1.

**Jurisdiction and Venue**

2.      Plaintiff has exhausted all her administrative remedies prior to bringing this lawsuit.

**Answer:**

Insofar as Paragraph 2 references the EEOC and IDHR administrative process, upon information and belief, Defendants admit the allegations of Paragraph 2. To the extent that Plaintiff is referencing administrative remedies other than the EEOC and IDHR, Defendants are without sufficient information to form a belief as to the truth of such allegations and therefore deny the same.

3.      March 11, 2024 Charge of Discrimination.

a.   Plaintiff filed a perfected Charge of Discrimination with the Illinois Department of Human Rights ("IDHR") in Charge No. 2024SF1401, on March 11, 2024 (Exhibit A). Plaintiff jointly filed her Charge with the Equal Employment Opportunity Commission ("EEOC") in EEOC Charge No. 21BA40709.

b.   Plaintiff requested and received a "Notice of Opt-Out of IDHR's Investigative and Administrative Process, and of Right to Commence and Action in Circuit Court" notice from the IDHR on May 15, 2024 (Exhibit B).

c.   Plaintiff received a "Right to Sue" letter from the EEOC on July 18, 2024 (Exhibit C).

**Answer:**

Upon information and belief, Defendants admit the allegations in Paragraph 3.

4.      June 25, 2024 Charge of Discrimination.

a.   Plaintiff filed a second perfected Charge of Discrimination with the IDHR in Charge No. 2024SF2451, on June 25, 2024 (Exhibit D). Plaintiff jointly filed her Charge with the EEOC in Charge No. 21BA41211.

b.   Plaintiff requested and received a "Notice of Opt-Out of IDHR's Investigative and Administrative Process, and of Right to Commence and Action in Circuit Court" notice from the IDHR on July 17, 2024 (Exhibit E).

c.   Plaintiff received a "Right to Sue" letter from the EEOC on July 18, 2024 (Exhibit F).

3381335.1

**Answer:**

Upon information and belief, Defendants admit the allegations in Paragraph 4.

5.    The venue of this Court to entertain the issues raised in this case is appropriate by virtue of Title 28, United States Code, Section 1391(b), since the Defendants engaged in their official activities within the judicial district of this Court and the claims giving rise to the above-captioned proceeding did occur within the judicial district of this Court.

**Answer:**

Defendants admit that venue is proper in this judicial district because Defendants engage

in activities in this district and Plaintiff was employed by Defendant Board in this judicial district,

but deny all remaining allegations in Paragraph 5.

**Parties**

6.    Plaintiff, Rebecca Kistler Ramey ("Rebecca" or "Plaintiff"), was, at all relevant times herein, employed by Champaign Unit #4 School District, and currently resides within this judicial district. Plaintiff is a protected party under the Illinois Human Rights Act, 775 ILCS 5/1-102 *et seq,* due to her sexual orientation and marital status, and Title VII due to her sexual orientation.

**Answer:**

In answer to the first sentence of Paragraph 6, Defendants admit that Plaintiff was

employed with the District from her hire on August 14, 2017 until her contract ended June 15,

2024 and upon information and belief, that she currently resides in this judicial district. Defendants

admit the allegations in the second sentence of Paragraph 6.

7.    Defendant, the Board of Education of Champaign Unit #4 School District ("School District") is a municipal corporation organized and existing under the laws of the State of Illinois.

**Answer:**

Defendants admit the allegations in Paragraph 7.

8.    Pursuant to Section 10-10 of the Illinois School Code (105 ILCS 5/10-10). The Board is the duly constituted and elected governing body of the School District. The School District is located in within [sic] the judicial district in Champaign County, Illinois.

3

**Answer:**

Defendants admit the allegations in Paragraph 8.

9.      Defendant, Champaign Unit #4 School District has employed Dr. Sheila [sic] E. Boozer ("Dr. Boozer") as Superintendent at all times material to this action. She is named in this proceeding both in his individual and, for the purpose of implementing equitable relief, her official capacities.

**Answer:**

Defendants admit the allegations in the first sentence of Paragraph 9. In answer to the second sentence of Paragraph 9, Defendants admit that Dr. Boozer is named as a Defendant in this proceeding in both her individual and official capacities but are without sufficient information to form a belief as to why Plaintiff has named her as a Defendant and therefore deny the same.

10.      Defendant Champaign Unit #4 School District has employed Defendant Kenneth J. Kleber ("Kleber") as Assistant Superintendent of Human Resources and Organizational Effectiveness all times material to this action. He is named in this proceeding both in his individual and, for the purposes implementing equitable relief, his official capacities.

**Answer:**

Defendants admit the allegations in the first sentence of Paragraph 10. In answer to the second sentence of Paragraph 10, Defendants admit that Mr. Kleber is named as a Defendant in this proceeding in both his individual and official capacities but are without sufficient information to form a belief as to why Plaintiff has named him as a Defendant and therefore deny the same.

11.      Defendant Champaign Unit #4 School District has employed Defendant Dr. Laura Taylor ("Dr. Taylor") as an Assistant Superintendent at all times material to this action. She is named in this proceeding both in her individual and, for the purpose of implementing equitable relief, her official capacities.

**Answer:**

Defendants admit the allegations in the first sentence of Paragraph 11. Answering further, Defendants state that Defendant Taylor resigned her employment with Defendant Board effective June 30, 2024. In answer to the second sentence of Paragraph 11, Defendants admit that Dr. Taylor

is named as a Defendant in this proceeding in both her individual and official capacities but are without sufficient information to form a belief as to why Plaintiff has named her as a Defendant and therefore deny the same.

### Allegations Common to All Counts

### A.    "The Beating Heart of BTW"

12.    Plaintiff, Ms. Rebecca Kistler Ramey, was hired by Champaign Unit 4 School District as the Assistant Principal for Booker T. Washington STEM Academy ("BTW") in August of 2019.

**Answer:**

Defendants admit the allegations in Paragraph 12.

13.    During her time at BTW, Rebecca was considered to be the "Beating Heart" of the elementary school.[1]  BTW's PTO President, Shawna den Otter, stated that Rebecca was "the principal who got called when kids were struggling" and who "was fun and happy and knew all 380 [children] by name, but even when they were 'in trouble' they knew she still loved them."[2] Rebecca spent her five years with BTW "making the students feeling known and seen, loved and protected" according to BTW parent Kris Elwell.[3]

**Answer:**

In answer to the first sentence of Paragraph 13, Defendants admit that in the newspaper article footnoted in Paragraph 13 of Plaintiff's Complaint, Plaintiff was referred to as the "beating heart" of BTW but deny that Defendants referred to Plaintiff in that way. In answer to the second and third sentences of Paragraph 13, Defendants admit that Plaintiff has quoted statements attributed to a PTA representative and a school parent, neither of whom is authorized to speak on behalf of Defendant Board and therefore deny the truth of those statements.

---

[1] D'Alessio, Jeff, *BTW without Ramey is just a building. She was the beating heart.* The News-Gazette, 10 August 2024.  https://www.news-gazette.com/news/btw-without-ramey-is-just-a-building-she-was-the-beating-heart/article_1ab0d928-5682-11ef-9344-2722efd85192.html.
[2] *Id.*
[3] *Id.*

3381335.1

14.    Since March 13, 2023, Rebecca has been married to Diana Kistler Ramey ("Diana"), who at all relevant times therein, was employed at Booker T. Washington Elementary School as a First-Grade Teacher.

**Answer:**

Defendants admit that Diana Kistler Ramey was employed at BTW as a first-grade teacher from August 15, 2022 through June 5, 2024 and upon information and belief, that she is married to Plaintiff but are without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 14 and therefore deny them.

15.    As a teacher, Diana was a member of the Champaign Federation of Teachers ("CFT") Union. Rebecca was not a member of the union, as she was part of the BTW Administration team.

**Answer:**

Defendants admit that Diana Kistler Ramey is a member of the CFT bargaining unit, and that Ramey was not a member of the union as part of the BTW administration team.

16.    District Administration, including Dr. Boozer, were aware that Rebecca and Diana are married and in a same-sex relationship.

**Answer:**

Defendants admit that certain administrators were aware that Plaintiff and Diana Kistler Ramey are married but is without sufficient information to form a belief as to the remaining allegations in Paragraph 16 and therefore deny them.

### B.    Booker T. Washington STEM Academy

17.    Booker T. Washington Elementary School first opened in Champaign County in 1952.[4] In 2011, the school was redesigned as Booker T. Washington STEM Academy ("BTW"). *Id.*

**Answer:**

Defendants admit the allegations in Paragraph 17.

18.    BTW is located on the north side of the City of Champaign and serves a majority Black student population. According to the Illinois State Board of Education, as of 2023, the racial

---

[4] "Booker T. Washington School." *Champaign County African American Heritage Trail.*

3381335.1

ethnic diversity enrollment at BTW was 13.2% White, 66.8% Black, 9.6% Hispanic, 4.9% Asian, and 5.5% two or more racial/ethnic groups.[5]

**Answer:**

Defendants admit the allegations in Paragraph 18.

19.     The City of Champaign's "Community Gun Violence Reduction Blueprint" identified the areas surrounding BTW as areas with a "minority-majority" populations as well as areas where the median household income is 75% below the city-wide median income.[6] Those same areas were identified in the Report as areas with high incidents of gun violence. *Id.*

**Answer:**

Upon information and belief, Defendants admit the allegations in Paragraph 19.

20.     During the February 13, 2022 Champaign City Council Meeting, the City Council passed Council Bill 2022-019 "A Resolution Adopting a Council Policy Regarding Community Gun Violence Reduction Blueprint and Codifying Such Policy (Equity and Engagement Department)." Among other items, the Resolution provided approximately $526,620.00 dollars of American Rescue Plan Act funding to the Champaign Unit 4 School District to help combat gun violence.

**Answer:**

Upon information and belief, Defendants admit the allegations in Paragraph 20.

21.     However, the Champaign Unit 4 School District did not take any steps to access or utilize the funds to curb gun violence. According to the News-Gazette, Dr. Boozer stated that "[ . . D]ata revealed that the most pressing needs for a large majority of students included more academic and social and emotional support."[7]

**Answer:**

Defendants deny the allegations in Paragraph 21.

---

[5] Booker T. Washington STEM Academy." *Illinois State Board of Education.* https//www.illinoisreportcard.com/.

[6] City of Champaign. "Community Gun Violence Reduction Blueprint." *City of Champaign.* February 2022. https://shorturl.at/fi6Ru. Accessed 13 August 2024.

[7] Debra Pressey, *Some Champaign council members unhappy with school district's response to gun violence plan.* The News-Gazette. September 22, 2023. https://www.news-gazette.com/newsletter/content/daily_ headlines/some-champaign-council-members-unhappy-with-the-school-disricts-response-to-gun-violence-plan/article_3fb18c1b-8051-507c-b53d-ec52213d92c9.html

### C.    September 14, 2023, Shooting and District Response

22.    At approximately 2:50 p.m. on September 14, 2023, gunshots were fired in front of BTW while students were outside at extra recess. Rebecca, Diana, and BTW Principal Jamie Roundtree took immediate action to secure the safety of the students and the school. Luckily, no serious injuries were reported, but the shooting in broad daylight while children were present was traumatic for both students and staff.

**<u>Answer:</u>**

Defendants admit that the incident described in Paragraph 22 occurred and that BTW staff

took action to secure students' and staff's safety but deny all remaining allegations in Paragraph 22.

23.    Instead of supporting the administration and teachers whose quick actions helped to prevent a potential tragedy at the school, Dr. Boozer orally reprimanded the BTW administrative team for allegedly "not pushing the right button" on the District's new "RAVE" alert system for major disturbances. (The team pushed the button to request police presence at the school.)

**<u>Answer:</u>**

Defendants admit that, in the aftermath of the incident, Defendant Boozer discussed the

operation of the District's new Rave alert system with members of the BTW administrative team

but deny all remaining allegations in Paragraph 23.

24.    Following the shooting, many teachers and parents were upset about how the District had handled the situation. On September 23, 2023, Adam West, a third-grade teacher at BTW, sent an email to Dr. Boozer stating that he and other BTW staff members felt the District's response to the shooting was inadequate (Exhibit G). Dr. Boozer responded to West's email in part with the following:

"I'm tired of nasty, disrespectful and downright hateful emails from you and your colleagues. Until you walk in my daily reality please do not email me nor my Board anymore disrespectful messages regarding anything." (Exhibit G)

Diana--along with other BTW teachers – was copied on this email message from Dr. Boozer.

**<u>Answer:</u>**

Defendants admit that BTW teacher Andrew West sent an email to Dr. Boozer and that the

email is attached to Plaintiff's Complaint. Defendants deny the allegations in Paragraph 24 to the

extent that they misstate the contents of West's email or take certain statements out of context.

8

Defendants further admit that Defendant Boozer replied to Mr. West's email and that her reply is attached to Plaintiff's Complaint. Defendants deny the allegations in Paragraph 24 to the extent that they misstate the contents of Defendant Boozer's email or take certain statements out of context.

**D.    The September 26, 2023 School Board Meeting**

25.    At the School Board meeting on September 26, 2023, several teachers and parents spoke out during public comment about the lack of support from District Administration at the time of the shooting. Diana, responding to Dr. Boozer's email message to West, spoke during public comments and stated the following:

"[. . .] I want to publicly forgive you, Dr. Boozer, for the hurt you have recently caused me. I forgive you for not showing up when we needed you.

I forgive you for beckoning me over with your finger.

I forgive you for forgetting to ask me if I was okay the day after my family experienced yet another traumatic event.

I forgive you for blaming our admin team for pushing the wrong button.

I forgive you for CCing me on the email tirade that I had no prior connection to and demanding that you not be contacted.

I forgive you for gaslighting all of us here tonight instead of seeking to understand and finding solutions."

**Answer:**

Defendants admit that Diana Kistler Ramey attended the September 26, 2023 school board meeting and made certain statements but deny all remaining allegations in Paragraph 25.

26.    Rebecca was in the audience during the time that Diana made the public comments to the Board.

**Answer:**

Upon information and belief, Defendants admit the allegations in Paragraph 26.

27.    Shortly after Diana's public comments at the meeting, Rebecca began to face retaliation from District Administration.

**Answer:**

Defendants deny the allegations in Paragraph 27.

**E.    Discrimination/Retaliation from the District**

28.    Several weeks after the September 26, 2023, Board meeting, there was a medication incident in which Rebecca dispensed a dose of the student's prescribed medication to the student without an updated Student Medical Authorization form from the student's guardian.

**Answer:**

Defendants admit that there were multiple school days in October 2023 when Plaintiff dispensed medication to a student without a School Medication Authorization Form after being advised against doing so by the school nurse because it was a violation of District policy. Answering further, Defendants state that the medication was not labeled. Defendants deny all remaining allegations in Paragraph 28.

29.    Though failing to have the updated form was a technical violation of District policy. Rebecca had the verbal approval from the parent to dispense the medication to the child, and her actions were taken solely in attempt to ensure that the child continued to receive their prescribed medication in a timely manner.

**Answer:**

Defendants admit that Plaintiff violated Board policy in dispensing medication to the student. Defendants are without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 29 and therefore deny them.

30.    Principal Roundtree conducted an internal investigation into the medication incident. Roundtree determined that since there had been no injuries and no willful or intentional violation of policy, Roundtree recommended that Rebecca be given a written reprimand for the incident, in keeping with District policies and procedures.

**Answer:**

Defendants admit the allegations in the first sentence of Paragraph 30. Defendants deny all remaining allegations in Paragraph 30 to the extent that they are not supported by the

3381335.1

November 19, 2023 investigation memo authored by Roundtree. That memo draws no conclusions about whether Plaintiff's conduct was a willful or intentional violation of policy, and his recommendation for discipline is unclear.

31.    However, District Administration rejected Roundtree's assessment and instead issued Rebecca a five-day unpaid suspension.

**Answer:**

Defendants admit that Plaintiff voluntarily accepted a five-day suspension that she served one day per month over a five-month period but deny all remaining allegations in Paragraph 31.

32.    Roundtree stated that the severity of Rebecca's punishment was due to Rebecca's sexual orientation (Exhibit H). Roundtree additionally expressed his belief that District Administration sought to retaliate against Rebecca after Diana spoke out against the District Administration at the September 26, 2023 School Board meeting. *Id.*

**Answer:**

Defendants admit that Plaintiff has attached to her Complaint a written statement that purports to be from Roundtree and that the statement contains factual averments from Roundtree but deny the truth of those averments with respect to Plaintiff being punished due to her sexual orientation or her relationship with Diana Kistler Ramey.

33.    In December of 2023, Roundtree was advised by Dr. Taylor that Dr. Boozer and Kleber were intending to transfer Rebecca from her Assistant Principal position at BTW. Dr. Taylor told Roundtree that "the decision has been made" by Administration, even though the matter had not been discussed with Rebecca, and a formal Board vote had not taken place approving the transfer.

**Answer:**

Defendants admit that Dr. Taylor advised Roundtree that Plaintiff would be transferred to another school in January, 2024 but deny all remaining allegations in Paragraph 33.

34.    Roundtree expressed his belief that the discussions regarding Rebecca's transfer were due to her sexual orientation, as well as her relationship with Diana following Diana's public comments.

11

**Answer**:

Defendants admit that Plaintiff has attached to her Complaint a written statement that purports to be from Roundtree and that the statement contains factual averments from Roundtree but deny all remaining allegations in Paragraph 34.

35.    In March of 2024, Rebecca was contacted by the District's secretary who informed her that Dr. Boozer wanted to meet with Rebecca over Spring Break. Rebecca was not provided with any reason for the meeting and was not allowed to have anyone attend the meeting with her.

**Answer**:

Defendants admit that on or about March 6, 2024, one of the District's secretaries contacted Plaintiff to invite her to a meeting later that day to discuss Plaintiff's transfer to another school; that Plaintiff stated that she was ill and could not attend; and that the meeting was tentatively scheduled for March 13, 2024; but deny all remaining allegations in Paragraph 35. Answering further, Defendants state that Plaintiff confirmed her attendance at the March 13 meeting in an email dated March 8, 2024.

36.    On March 11, 2024, Rebecca filed a Charge of Discrimination with the Illinois Department of Human Rights (IDHR Control #24M0312.02) alleging that she had been discriminated against on the basis of her sexual orientation regarding the five-day suspension she received in December 2023. (Exhibit A) Rebecca copied Dr. Boozer, Ken Kleber, Dr. Taylor and District legal counsel on the correspondence to IDHR.

**Answer**:

Upon information and belief, Defendants admit the allegations in the first sentence of Paragraph 36. Defendants admit the allegations in the second sentence of Paragraph 36.

37.    On March 13, 2024, Rebecca met with Dr. Boozer, Kleber and Dr. Taylor (present via phone). Rebecca was told that she would be transferred to Kenwood Elementary School on March 18, 2024, to finish out the 2023-2024 school year.

**Answer:**

Defendants admit that there was a meeting between Defendants Boozer, Kleber, and Taylor and Plaintiff on March 13, 2024 and that Plaintiff was informed that she would be transferred to Kenwood Elementary School to complete the school year but deny all remaining allegations in Paragraph 37.

38.    During the meeting, Dr. Boozer told Rebecca there was "an issue with [her] wife" which had started "when [her] wife came over [to BTW]." Dr. Boozer further stated that she was "not sure" whether Rebecca would have a position as an Assistant Principal with the District the following school year.

**Answer:**

Defendants admit that during the meeting, Defendant Boozer mentioned that Roundtree had committed to isolating Plaintiff from concerns of favoritism by removing Plaintiff from decisions involving her wife when her wife was first hired; that this had not happened and there had been issues; and that there was discussion about whether Plaintiff would be an Assistant Principal or a teacher the following year; but deny all remaining allegations in Paragraph 38.

39.    Dr. Boozer's comments during this meeting came less than 48 hours after Rebecca had filed her Charge of Discrimination against the District.

**Answer:**

Defendants admit that the meeting occurred two days after Plaintiff ostensibly filed her Charge but deny all remaining allegations in Paragraph 39. Answering further, Defendants state that the date of the meeting was scheduled on March 6, five days before Plaintiff filed her Charge, and Plaintiff confirmed her attendance at the meeting on March 8, three days before she filed her Charge.

40.    Rebecca's attorney, Ronald Langacker ("Langacker"), emailed Dr. Boozer later that day, noting that "the fact that Ms. Ramey's relationship was her spouse was broached at the meeting at all, let alone as an apparent justification for the transfer, is frankly shocking." Langacker stated that the District's actions appeared "punitive and retaliatory." (Exhibit I).

**Answer**:

Defendants admit that attorney Langacker emailed a letter to Dr. Boozer that contained the statements set forth in Paragraph 40 but deny the truth of attorney Langacker's statements. Answering further, Defendants state that attorney Langacker contacted Defendant Boozer directly despite knowing that the Board and District administration were represented by legal counsel and the Board's legal counsel was copied on the letter.

41.     During the entire remainder of the 2023-2024 school year, the School Board did not address the issue of Rebecca's transfer, and the transfer was never approved by the School Board.

**Answer**:

Defendants admit the allegations in Paragraph 41. Answering further, Defendants state that District policy does not require Board approval of a transfer.

42.     On July 25, 2024, Rebecca considered herself to have been constructively discharged by the District. (Exhibit J)

**Answer**:

Defendants lack sufficient information to form a belief as to the truth of the allegations in Paragraph 42 and therefore deny them. Answering further, Defendants state that the District had a position for Plaintiff as an Assistant Principal for the 2024-25 school year.

**Count I**
**(Illinois Human Rights Act – Sexual Orientation)**
**(Champaign Unit 4)**

43.     Plaintiff repeats and re-alleges the previous paragraphs in this Complaint as if fully set forth herein.

**Answer**:

Defendant Board incorporates by reference its Answers to Paragraphs 1 through 42, inclusive, as though fully set forth herein.

14

44.    Plaintiff is a member of a protected class as that term is defined by 775 ILCS 5/1-103, as it relates to her sexual orientation.

**Answer:**

Defendant Board admits the allegations in Paragraph 44.

45.    Plaintiff met and exceeded the reasonable expectations of her employment.

**Answer:**

Defendant Board denies the allegations in Paragraph 45.

46.    Plaintiff experienced discrimination from the School District when she was given a 5-day unpaid suspension due to her sexual orientation.

**Answer:**

Defendant Board denies the allegations in Paragraph 46. Answering further, Defendants state that Plaintiff voluntarily accepted a five-day suspension.

47.    Plaintiff suffered an adverse action when the district made the decision to transfer Plaintiff to another school as a result of her sexual orientation and was otherwise constructively discharged from her employment.

**Answer:**

Defendant Board denies the allegations in Paragraph 47.

48.    Other employees who do not identify with the LGBTQ+ community were not discriminated against or constructively discharged by Defendants.

**Answer:**

Defendant Board admits that neither Plaintiff nor other employees were discriminated against or constructively discharged.

49.    As a direct and proximate result of one or more of the above acts of retaliation, Plaintiff has sustained monetary damages, damages to her professional reputation, emotional distress, and is entitled to compensatory damages, punitive damages, as well as attorneys' fees and costs.

**Answer:**

Defendant Board denies the allegations in Paragraph 49.

**Count II**
**(Title VII – Sexual Orientation)**
**(Champaign Unit 4)**

50.    Plaintiff repeats and re-alleges the previous paragraphs in this Complaint as if fully set forth herein.

**Answer:**

Defendant Board incorporates by reference its Answers to Paragraphs 1 through 49, inclusive, as though fully set forth herein.

51.    Plaintiff is a protected party under Title VII (Civil Rights Act of 1964, Section 704 *et seq.* 42 U.S.C.A. 2000e *et seq.*) due to her sexual orientation.

**Answer:**

Defendant Board admits the allegations in Paragraph 51.

52.    Plaintiff met and exceeded the reasonable expectations of her employment.

**Answer:**

Defendant Board denies the allegations in Paragraph 52.

53.    Plaintiff experienced discrimination from the School District when she was given a 5-day unpaid suspension due to her sexual orientation.

**Answer:**

Defendant Board denies the allegations in Paragraph 53. Answering further, Defendants state that Plaintiff voluntarily accepted a five-day suspension.

54.    Moreover, Plaintiff suffered an adverse action when the District made the decision to transfer Plaintiff due to her sexual orientation, as well as being constructively discharging her from her employment.

3381335.1

**Answer:**

Defendant Board denies the allegations in Paragraph 54.

55.    Other employees who do not identify with the LGBTQ+ community were not discrimination against or constructively discharged by Defendants.

**Answer:**

Defendant Board admits that neither Plaintiff nor any other District employee have been

discriminated against or constructively discharged.

56.    As a direct and proximate result of one or more of the above acts, Plaintiff has sustained monetary damages, damage to her professional reputation, emotional distress, and is entitled to compensatory damages, punitive damages, as well as attorneys' fees and costs.

**Answer:**

Defendant Board denies the allegations in Paragraph 56.

**Count III**
**(Illinois Human Rights Act – Marital Status)**
**(Champaign Unit 4)**

57.    Plaintiff repeats and re-alleges the previous paragraphs in this Complaint as if fully set forth herein.

**Answer:**

Defendant Board incorporates by reference its Answers to Paragraphs 1 through 56, inclusive, as though fully set forth herein.

58.    Plaintiff is a protected party as defined by 775 ILCS 5/1-103, due to her marital status.

**Answer:**

Defendant Board admits the allegations in Paragraph 58.

59.    Plaintiff met and exceeded the reasonable expectations of her employment.

**Answer:**

Defendant Board denies the allegations in Paragraph 59.

3381335.1

60.    Plaintiff experienced discrimination from District Administration when she was given a 5-day unpaid suspension due to her marital status.

**Answer:**

Defendant Board denies the allegations in Paragraph 60. Answering further, Defendants

state that Plaintiff voluntarily accepted a five-day suspension.

61.    Plaintiff suffered an adverse action on March 13, 2024 when the District made the decision to transfer Plaintiff due to her marital status.

**Answer:**

Defendant Board denies the allegations in Paragraph 61.

62.    Other employees who were not in the same protected class as the Plaintiff were treated more favorably by Defendants.

**Answer:**

Defendant Board denies the allegations in Paragraph 62.

63.    As a direct and proximate result of one or more of the above acts, Plaintiff has sustained monetary damages, damage to her professional reputation, emotional distress, and is entitled to compensatory damages, punitive damages, as well as attorneys' fees and costs.

**Answer:**

Defendant Board denies the allegations in Paragraph 63.

**Count IV**
**(Illinois Human Rights Act – Retaliation)**
**(Champaign Unit 4)**

64.    Plaintiff repeats and re-alleges the previous paragraphs of the Complaint as if fully set forth herein.

**Answer:**

Defendant Board incorporates by reference its Answers to Paragraphs 1 through 63,

inclusive, as though fully set forth herein.

65.    The Illinois Human Rights Act ("IHRA") forbids retaliation against anyone who has opposed any practice made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing. 775 ILCS 5/6-101.

**Answer:**

Defendant Board admits that Paragraph 65 recites one of the IHRA's statutory prohibitions but denies that it has violated the IHRA.

66.    Moreover, it is a civil rights violation to retaliate against a person because he or she has opposed that which he or she reasonably and in good faith believes to be unlawful discrimination, sexual harassment in employment or sexual harassment in elementary, secondary, and higher education, discrimination based on citizenship status in employment, 775 ILCS 5/6-101.

**Answer:**

Defendant Board admits that Paragraph 66 recites one of the IHRA's statutory prohibitions but denies that it has violated the IHRA.

67.    Plaintiff engaged in a protected activity pursuant to Section 6-101(A) of the Act as outlined above, when she filed the Charge of Discrimination on March 11, 2024.

**Answer:**

Upon information and belief, Defendant Board admits the allegations in Paragraph 67.

68.    Champaign Unit 4 School District was aware that Plaintiff had engaged in protected activity on March 11, 2024.

**Answer:**

Defendant Board admits that Plaintiff's attorney emailed a copy of Plaintiff's Charge on the evening of March 11, 2024 but deny all remaining allegations in Paragraph 68.

69.    Plaintiff suffered a materially adverse employment action as she was transferred to another elementary school within the District only 48 hours after filing a Charge of Discrimination with the Illinois Department of Human Rights.

**Answer:**

Defendant Board denies the allegations in Paragraph 69.

70.    A reasonable employee would have found the action materially adverse, as the District's action would have dissuaded a reasonable person from making or supporting a charge of discrimination.

19

**Answer:**

Defendant Board denies the allegations in Paragraph 70.

71.    A causal connection exists between Plaintiff's protected activity and the adverse employment actions of Defendants.

**Answer:**

Defendant Board denies the allegations in Paragraph 71.

72.    Any rational from the District for transferring Plaintiff is pretextual.

**Answer:**

Defendant Board denies the allegations in Paragraph 72.

73.    As a direct and proximate result of one or more of the above acts, Plaintiff has sustained monetary damages, damage to her professional reputation, emotional distress, and is entitled to compensatory damages, punitive damages, as well as attorneys' fees and costs.

**Answer:**

Defendant Board denies the allegations in Paragraph 73.

**Count VI**
**(Title VII – Retaliation)**
**(Champaign Unit 4)**

74.    Plaintiff repeats and re-alleges the previous paragraphs of the Complaint as if fully set forth herein.

**Answer:**

Defendant Board incorporates by reference its Answers to Paragraphs 1 through 73, inclusive, as though fully set forth herein.

75.    Title VII of the Civil Rights Act forbids retaliation against anyone who has opposed any practice made an unlawful employment practice by Title VII or because he or she has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing. 42 U.S.C.A. § 2000e-3(a).

**Answer:**

Defendant Board admits that Paragraph 75 recites one of Title VII's statutory prohibitions but denies that it has violated Title VII.

76.    Moreover, it is a civil rights violation to retaliate against a person because her or she has opposed that which he or she reasonably and in good faith believes to be unlawful discrimination, sexual harassment in employment or sexual harassment in elementary, secondary and higher education, discrimination based on citizenship status in employment, 42 U.S.C. § 2000e-3(a).

**Answer:**

Defendant Board admits that Paragraph 76 recites one of Title VII's statutory prohibitions but denies that it has violated Title VII.

77.    Plaintiff engaged in a protected activity pursuant to 42 U.S.C.A. § 2000e-3(a) when she filed a Charge of Discrimination on March 11, 2024, as described above.

**Answer:**

Defendant Board admits that filing a charge of discrimination is protected activity under Title VII but denies all remaining allegations in Paragraph 77.

78.    Champaign Unit 4 School District was aware that Plaintiff had engaged in protected activity on March 11, 2024.

**Answer:**

Defendant Board admits the allegations in Paragraph 78.

79.    Plaintiff suffered a materially adverse employment action by Defendant as two days after she filed the Charge of Discrimination, she was immediately transferred to another elementary school within the District.

**Answer:**

Defendant Board denies the allegations in Paragraph 79.

80.    A reasonable employee would have found the action materially adverse, as the District's action would have dissuaded a reasonable person from making or supporting a charge of discrimination.

3381335.1

**Answer:**

Defendant Board denies the allegations in Paragraph 80.

81.    A causal connection exists between Plaintiff's protected activity and the adverse employment actions of Defendants.

**Answer:**

Defendant Board denies the allegations in Paragraph 81.

82.    That any rationale from the District for transferring the Plaintiff is pretextual.

**Answer:**

Defendant Board denies the allegations in Paragraph 82.

83.    As a direct and proximate result of one or more of the above acts, Plaintiff has sustained monetary damages, damage to her professional reputation, emotional distress, and is entitled to compensatory damages, punitive damages, as well as attorneys' fees and costs.

**Answer:**

Defendant Board denies the allegations in Paragraph 83.

**Count IV**
**(42 U.S.C. § 1983 Violation of First and Fourteenth Amendment)**
**(Individual Defendants)**

84.    Plaintiff repeats and re-alleges all paragraphs in this Complaint as if fully set forth herein.

**Answer:**

Defendants Boozer, Kleber, and Taylor incorporate by reference their Answers to

Paragraphs 1 through 42, inclusive, as though fully set forth herein.

85.    Plaintiff brings her familial association claim under the First Amendment, or in the alternative, the due process clause to the Fourteenth Amendment.

**<u>Answer</u>:**

Defendants Boozer, Kleber, and Taylor admit that Plaintiff purports to bring a claim under

the First or Fourteenth Amendments but deny all remaining allegations in Paragraph 85.

86.    At all times relevant herein, Defendants Boozer, Kleber and Taylor acted as agents, employees, supervisors, and final policymakers for the Champaign Unit #4 School District.

**<u>Answer</u>:**

Defendants Boozer, Kleber, and Taylor admit that they have been employed by Defendant

Board in supervisory roles but deny all remaining allegations in Paragraph 86.

87.    The conduct of Defendants was and became the custom and practice of Defendants.

**<u>Answer</u>:**

Defendants Boozer, Kleber, and Taylor deny the allegations in Paragraph 87.

88.    Plaintiff has a liberty right to have intimate human relationships with her wife (right to "familial association"). Plaintiff is further entitled to the right to freedom of association under the First Amendment to the United States Constitution.

**<u>Answer</u>:**

Defendants Boozer, Kleber, and Taylor admit the allegations in Paragraph 88.

89.    As described above, Plaintiff's spouse engaged in activity protected by the First Amendment when she made comments critical of the District's administration on September 26, 2023.

**<u>Answer</u>:**

Defendants Boozer, Kleber, and Taylor state that Paragraph 89 contains conclusions of law

to which no answer is required. To the extent that Paragraph 89 is deemed to contain allegations

of fact, they are denied.

90.    Plaintiff's spouse's speech involved a matter of public concern.

23

**Answer:**

Defendants Boozer, Kleber, and Taylor state that Paragraph 90 contains conclusions of law to which no answer is required. To the extent that Paragraph 90 is deemed to contain allegations of fact, they are denied.

91.     Plaintiff was deprived of her right to familial association when Defendants retaliated and conspired to retaliate against Plaintiff because of her association with her wife, Diana Kistler Ramey.

**Answer:**

Defendants Boozer, Kleber, and Taylor state that Paragraph 91 contains conclusions of law to which no answer is required. To the extent that Paragraph 91 is deemed to contain allegations of fact, they are denied.

92.     Plaintiff suffered a deprivation likely to deter speech, including, but not limited to, being given a five-day suspension without pay, transferring Plaintiff abruptly to another elementary school within the District, and ultimately constructively discharging Plaintiff.

**Answer:**

Defendants deny the allegations in Paragraph 92. Answering further, Defendants state that Plaintiff voluntarily accepted a five-day suspension.

93.     The individual Defendants intentionally retaliated against Plaintiff with malice or reckless indifference to Plaintiff's rights of freedom of speech.

**Answer:**

Defendants deny the allegations in Paragraph 93.

94.     Defendants' actions constituted an unwarranted and undue interference into Plaintiff's family relationships, and an unconstitutional infringement upon Plaintiff's due process and/or First Amendment right to familial association.

3381335.1

**Answer:**

Defendants Boozer, Kleber, and Taylor state that Paragraph 94 contains conclusions of law to which no answer is required. To the extent that Paragraph 94 is deemed to contain allegations of fact, they are denied.

95.    The actions of Defendants against Plaintiff violate his due process right to be free from retaliation because of his association with her wife under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

**Answer:**

Defendants Boozer, Kleber, and Taylor state that Paragraph 95 contains conclusions of law to which no answer is required. To the extent that Paragraph 95 is deemed to contain allegations of fact, they are denied.

96.    The actions of Defendants against Plaintiff violate Plaintiff's right to be free from retaliation because of her association with her wife under the First Amendment of the United States Constitution and 42 U.S.C. § 1983.

**Answer:**

Defendants Boozer, Kleber, and Taylor state that Paragraph 96 contains conclusions of law to which no answer is required. To the extent that Paragraph 96 is deemed to contain allegations of fact, they are denied.

97.    The conduct of Defendants violated Plaintiff's right to familial association as provided by the First and Fourteenth Amendment to the Constitution.

**Answer:**

Defendants Boozer, Kleber, and Taylor state that Paragraph 97 contains conclusions of law to which no answer is required. To the extent that Paragraph 97 is deemed to contain allegations of fact, they are denied.

98.    Defendants intentionally retaliated against Plaintiff with malice or reckless indifference to Plaintiff's civil rights, thereby entitling Plaintiff to punitive damages.

3381335.1

**Answer:**

Defendants Boozer, Kleber, and Taylor deny the allegations in Paragraph 98.

99.    As a direct and proximate result of one or more of the above acts, Plaintiff has sustained monetary damages, damage to her professional reputation, emotional distress, and is entitled to compensatory damages, punitive damages, as well as attorneys' fees and costs.

**Answer:**

Defendants Boozer, Kleber, and Taylor deny the allegations in Paragraph 99.

**Prayer for Relief**

Wherefore Plaintiff Rebecca Kistler Ramey, respectfully requests that this Court enter the following relief:

A.  Award Plaintiff damages sufficient to compensate her for any economic losses suffered as a result of conduct alleged in the Complaint.

B.  Assess against Defendants all incidental and consequential damages, the costs and expenses incurred by Plaintiff in maintaining the above-captioned proceedings together with reasonable attorneys' fees incurred by Plaintiff in prosecuting the above-captioned proceedings case.

C.  Award against Defendants and in favor of Plaintiff such compensatory and exemplary damages as may be permitted by law.

D.  Enter a declaratory judgment determining that the actions complained of in this Complaint are unlawful and in violation of the provisions of sate and federal law, and issue a mandatory injunction against Defendants to refrain from engaging in any actions with respect to Plaintiff which are prohibited under the terms of the foregoing laws.

E.  Issue a mandatory injunction directing Defendants to reinstate Plaintiff to the position of employment which she held prior to the conduct complained of in this Complaint with all employment duties, responsibilities, salaries, benefits and rights attendant to that position;

F.  Award punitive damages as permitted by law, and against the Defendants in their individual capacities (See *Minix v. Canarecci*, 597 F.3d 824, 830 (7th Cir. 2010; *Bosco v. Serhant*, 836 F.2d 271, 281 (7th Cir. 1987); and

G.  For all further relief the court deems equitable and just.

3381335.1

**Answer**:

Defendants deny that Plaintiff is entitled to any of the relief requested in her Complaint.

Plaintiff demands trial by jury.

**Answer**:

No answer to Plaintiff's jury demand is required.

## AFFIRMATIVE DEFENSES

1.      Defendant Board has effectively communicated policies and procedures for employees such as Plaintiff to raise concerns regarding harassment or discrimination based on marital status, sexual orientation or other protected characteristics. Employees are encouraged to raise complaints through these policies and procedures if they believe they have been the victim of unlawful harassment. Defendant Board prohibits retaliation against those employees who raise complaints of discrimination. Plaintiff was aware of these policies.

2.      Although Defendant Board denies that any actionable conduct occurred, Plaintiff's claims are barred and any recovery of damages is precluded to the extent Plaintiff failed to take advantage of preventive or corrective opportunities provided or to otherwise avoid any alleged harm, and Defendant Board exercised reasonable care to prevent any alleged harassment and took timely and appropriate action to address any complaints reported.

3.      Defendants deny that they violated any federal or state law, and specifically deny that any alleged violations were willful.

4.      Defendants state that any acts or omissions alleged by Plaintiff that give rise to this action were reasonable and not undertaken with reckless disregard to whether such acts or omissions violated federal or state law.

5.      Defendants at all times acted in good faith and had reasonable grounds for believing that their alleged actions and omissions were in compliance with federal and state law.

Accordingly, no punitive damages or penalties should be awarded because the alleged actions or omissions were undertaken in good faith, without malice or intent to injure Plaintiff, and do not constitute willful violations.

6.      To the extent Plaintiff seeks to recover lost income from Defendants, upon information and belief, Plaintiff has failed to mitigate her damages by, among other things, failing to make reasonable efforts to secure alternative sources of income.

7.      Alternatively, to the extent Plaintiff has mitigated her damages, any damages awarded to Plaintiff must be reduced by the amount of Plaintiff's substitute income including but not limited to earnings from alternative employment.

8.      To the extent Plaintiff asserts claims for actions allegedly taken more than 300 days before the filing of her IDHR and EEOC Charges, such claims are barred from recovery as untimely.

9.      To the extent that the adverse actions alleged in Plaintiff's Complaint are not like or reasonably related to those alleged in her IDHR and EEOC Charges, they must be dismissed.

Respectfully submitted,

**Board of Education of Champaign Unit 4 School District, Dr. Shelia E. Boozer, Kenneth L. Kleber and Dr. Laura Taylor, Defendants**

By: /s/ Tracey L. Truesdale (ARDC No. 6207891)
              One of Their Attorneys

Caroline K. Kane - ckk@franczek.com
Tracey L. Truesdale - tlt@franczek.com
Haily M. Golds - hmg@franczek.com
Franczek P.C.
300 South Wacker Drive, Suite 3400
Chicago, IL 60606
(312) 986-0300

Dated:  December 19, 2024

3381335.1

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that she caused a true and correct copy of the foregoing **DEFENDANTS' ANSWER TO COMPLAINT AT LAW AND AFFIRMATIVE DEFENSES**, to be filed with the Clerk of the Court using the CM-ECF Filing System, which will electronically serve all parties of record on this 19th day of December, 2024, as follows:

> Ronald S. Langacker
> Langacker Law, Ltd.
> 210 N. Broadway
> Urbana, Illinois 61801
> (217) 954-1025
> ron@langackerlaw.com

> /s/ Tracey L. Truesdale
> tlt@franczek.com

3381335.1