E-FILED
Monday, 31 March, 2025  02:10:03 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| REBECCA KISTLER RAMEY, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. Case No. 2:24-cv-2194 |
| BOARD OF EDUCATION OF | ) | |
| CHAMPAIGN UNIT 4 SCHOOL | ) | |
| DISTRICT; Dr. SHEILA E. BOOZER, in her | ) | |
| Individual Capacity; KENNETH L. | ) | |
| KLEBER, in his Individual Capacity; and | ) | |
| Dr. LAURA TAYLOR, in her Individual | ) | **JURY TRIAL** |
| Capacity; | ) | **DEMANDED** |
| | ) | |
| **Defendants.** | ) | |

## FIRST AMENDED COMPLAINT AT LAW

NOW COMES Plaintiff, Rebecca Kistler Ramey, by and through her attorney, Ronald

S. Langacker of Langacker Law, Ltd., and for her First Amended Complaint against Defendants,

Board of Education of Champaign Unit #4 School District ("Champaign Unit #4 School District"

or "School District"); Dr. Sheila E. Boozer, in her individual capacity; Kenneth L. Kleber, in his

individual capacity; and Dr. Laura Taylor, in her individual capacity; hereby states as follows:

## NATURE OF THE ACTION

1. This action is brought to remedy unlawful discrimination practices and retaliation as stated

   under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*; and for

   redress for violations of Plaintiff's right of freedom of familial association through the First

   and/or Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983.

   Plaintiff seeks injunctive relief including but not limited to: back pay and reinstatement to her

2:24-cv-02194-CSB-EIL    # 19    Filed: 03/31/25    Page 2 of 19

prior position, other make-whole relief, compensatory damages, and punitive damages against Defendants. Plaintiffs seek declaratory and injunctive relief as well as damages.

## JURISDICTION AND VENUE

2. Plaintiff has exhausted all administrative remedies prior to bringing this lawsuit.

    a. <u>March 11, 2024 Charge of Discrimination</u>

        i. Plaintiff filed a perfected Charge of Discrimination with the Illinois Department of Human Rights ("IDHR") in Charge No. 2024SF1401, on March 11, 2024 (Exhibit A). Plaintiff jointly filed her Charge with the Equal Employment Opportunity Commission ("EEOC") in EEOC Charge No. 21BA40709.

        ii. Plaintiff requested and received a "Notice of Opt-Out of IDHR's Investigative and Administrative Process, and of Right to Commence and Action in Circuit Court" notice from the IDHR on May 15, 2024 (Exhibit B).

        iii. Plaintiff received a "Right to Sue" letter from the EEOC on July 18, 2024 (Exhibit C).

    b. <u>June 25, 2024 Charge of Discrimination</u>

        i. Plaintiff filed a second perfected Charge of Discrimination with the IDHR in Charge No. 2024SF2451, on June 25, 2024 (Exhibit D). Plaintiff jointly filed her Charge with the EEOC in Charge No. 21BA41211.

        ii. Plaintiff requested and received a "Notice of Opt-Out of IDHR's Investigative and Administrative Process, and of Right to Commence and Action in Circuit Court" notice from the IDHR on July 17, 2024 (Exhibit E).

        iii. Plaintiff received a "Right to Sue" letter from the EEOC on July 18, 2024 (Exhibit F).

    c. <u>September 24, 2024 Charge of Discrimination</u>

        i. Plaintiff filed a perfected Charge of Discrimination with the Illinois Department of Human Rights ("IDHR") in Charge No. 2025SF0343, on September 24, 2024 (Exhibit G). Plaintiff jointly filed her Charge with the Equal Employment Opportunity Commission ("EEOC") in Charge No. 21BA41496.

        ii. Plaintiff received a "Right to Sue" letter from the EEOC on January 30, 2025. (Exhibit H).

3. The venue of this Court to entertain the issues raised in this case is appropriate by virtue of Title 28, United States Code, Section 1391(b), since the Defendants engaged in their official activities within the judicial district of this Court and the claims giving rise to the above-captioned proceeding did occur within the judicial district of this Court.

## **PARTIES**

4. Plaintiff, Rebecca Kistler Ramey ("Rebecca" or "Plaintiff"), was, at all relevant times herein, employed with the Champaign Unit #4 School District, and currently resides within this judicial district. Plaintiff is a protected party under the Illinois Human Rights Act, 775 ILCS 5/1-102 *et seq*, due to her sexual orientation and marital status, and Title VII due to her sexual orientation.

5. Defendant, the Board of Education of Champaign Community Unit #4 School District ("School District") is a municipal corporation organized and existing under the laws of the State of Illinois.

6. Pursuant to Section 10-10 of the Illinois School Code (105 ILCS 5/10-10), the Board is the duly constituted and elected governing body of the School District. The School District is located in

within the judicial district in Champaign County, Illinois.

7. Defendant, Champaign Community Unit #4 School District has employed Defendant Dr. Sheila E. Boozer ("Dr. Boozer") as Superintendent at all times material to this action. She is named in this proceeding both in his individual and, for the purpose of implementing equitable relief, her official capacities.

8. Defendant Champaign Community Unit #4 School District has employed Defendant Kenneth L. Keber ("Kleber") as Assistant Superintendent of Human Resources and Organizational Effectiveness at all times material to this action. He is named in this proceeding both in his individual and, for the purpose of implementing equitable relief, his official capacities.

9. Defendant Champaign Community Unit #4 School District has employed Defendant Dr. Laura Taylor ("Dr. Taylor") as an Assistant Superintendent at all times material to this action. She is named in this proceeding both in her individual and, for the purpose of implementing equitable relief, her official capacities.

## ALLEGATIONS COMMON TO ALL COUNTS

### A. "The Beating Heart of BTW"

10. Plaintiff, Ms. Rebecca Kistler Ramey, was hired by the Champaign Unit 4 School District as the Assistant Principal for Booker T. Washington STEM Academy ("BTW") in August of 2019.

11. During her time at BTW, Rebecca was considered to be the "Beating Heart" of the elementary school.[1]   BTW's PTO President, Shawna den Otter, stated that Rebecca was "the principal who got called when kids were struggling" and who "was fun and happy and knew all 380

---

[1] D'Alessio, Jeff, *BTW without Ramey is just a building. She was the beating heart.* The News-Gazette, 10 August 2024. https://www.news-gazette.com/news/btw-without-ramey-is-just-a-building-she-was-the-beating-heart/article_1ab0d928-5682-11ef-9344-2722efd85192.html

4

[children] by name, but even when they were 'in trouble' they knew she still loved them."[2] Rebecca had spent the past five years "making the students feeling known and seen, loved and protected" according to BTW parent Kris Elwell.[3]

12. Since March 13, 2023, Rebecca Kistler Ramey has been married to Diana Kistler Ramey ("Diana"), who at all relevant times therein, was employed at Booker T. Washington Elementary School as a First-Grade Teacher.

13. As a teacher, Diana was a member of the Champaign Federation of Teachers ("CFT") Union. Rebecca was not a member of the bargaining unit, as she was part of the Administration team at BTW.

14. District Administration, including Dr. Boozer, were aware that Rebecca and Diana are married and in a same-sex relationship.

**B. Booker T. Washington STEM Academy**

15. Booker T. Washington Elementary School first opened in Champaign County in 1952[4]. In 2011, the school was redesigned as Booker T. Washington STEM Academy ("BTW"). *Id.*

16. BTW is located on the north side of the City of Champaign and serves a majority Black student population. According to the 2023 data from the Illinois State Board of Education, as of 2023, the racial/ethnic diversity enrollment at BTW was 13.2% White, 66.8% Black, 9.6% Hispanic, 4.9% Asian, and 5.5% two or more racial/ethnic groups.[5]

17. The City of Champaign's "Community Gun Violence Reduction Blueprint" identified the areas surrounding BTW as areas with a "minority-majority" populations as well as areas

---

[2] *Id.*
[3] *Id.*
[4] "Booker T. Washington School." *Champaign County African American Heritage Trail.* https://ccafricanamericanheritage.org/trail-stop/booker-t-washington-school/.
[5] "Booker T. Washington STEM Academy." *Illinois State Board of Education.* https://www.illinoisreportcard.com/.

where the median household income is 75% below the city-wide median income.[6] Those same areas were identified in the Report as areas with high incidents of gun violence. *Id.*

18. During the February 15, 2022 Champaign City Council Meeting, the City Council passed Council Bill 2022-019 "A Resolution Adopting a Council Policy Regarding Community Gun Violence Reduction Blueprint and Codifying Such Policy (Equity and Engagement Department)." Among other items, the Resolution provided approximately $526,620.00 dollars of American Rescue Plan Act funding to the Champaign Unit 4 School District to help combat gun violence.

19. However, the Champaign Unit 4 School District did not take any steps to access or utilize those funds to curb gun violence. According to the News-Gazette, Dr. Boozer stated that "[...D]ata revealed that the most pressing needs for a large majority of students included more academic and social and emotional support."[7]

### C. September 14, 2023, Shooting and District Response

20. At approximately 2:50 p.m. on September 14, 2023, gunshots were fired in the street in front of BTW while students were outside at extra recess. Rebecca, Diana, and BTW Principal Jamie Roundtree took immediate action to secure the safety of the students and the school. Luckily, no serious injuries were reported, but the shooting in broad daylight while children were present was traumatic for both students and staff.

21. Instead of supporting the administration and teachers whose quick actions helped to prevent a potential tragedy at the school, Dr. Boozer orally reprimanded the BTW administrative

---

[6] City of Champaign. "Community Gun Violence Reduction Blueprint." *City of Champaign*. February 2022. https://shorturl.at/fi6Ru. Accessed 13 August 2024.
[7] Debra Pressey, *Some Champaign council members unhappy with school district's response to gun violence plan.* The News-Gazette. September 22, 2023. https://www.news-gazette.com/newsletter/content/daily_headlines/some-champaign-council-members-unhappy-with-school-districts-response-to-gun-violence-plan/article_3fb18c1b-8051-507c-b53d-ec52213d92c9.html

team for allegedly "not pushing the right button" on the District's new "RAVE" alert system for major disturbances. (The team pushed the button to request police presence at the school.)

22. Following the shooting, many teachers and parents were upset about how the District had handled the situation. On September 23, 2023, Adam West, a third-grade teacher at BTW, sent an email to Dr. Boozer stating that he and other BTW staff members felt the District's response was inadequate (Exhibit I). Dr. Boozer responded to West's email in part with the following:

> "I'm tired of the nasty, disrespectful and downright hateful emails from you and your colleagues. Until you walk in my daily reality please do not email me nor my Board anymore disrespectful messages regarding anything." (Exhibit I)

Diana—along with other BTW teachers—was copied on this email message from Dr. Boozer.

**D. The September 26, 2023 School Board Meeting**

23. At the School Board meeting on September 26, 2023, several teachers and parents spoke out during public comment about the lack of support from District Administration at the time of the shooting. Diana, responding to Dr. Boozer's email message to West, spoke during public comments and stated the following:

> "[…] I want to publicly forgive you, Dr. Boozer, for the hurt you have recently caused me. I forgive you for not showing up when we needed you.
>
> I forgive you for beckoning me over with your finger.
>
> I forgive you for forgetting to ask me if I was okay the day after my family experienced yet another traumatic event.
>
> I forgive you for blaming our admin team for pushing the wrong button.
>
> I forgive you for CCing me on an email tirade that I had no prior connection to and demanding that you not be contacted.
>
> I forgive you for gaslighting all of us here tonight instead of seeking to

understand and finding solutions."

24. Rebecca was in the audience during the time that Diana made public comments to the Board.

25. Shortly after Diana's public comments at this meeting, Rebecca began to face retaliation from District Administration.

**E. Discrimination/Retaliation from the District**

26. Several weeks after the September 26, 2023, Board meeting, there was a medication incident in which Rebecca allegedly dispensed a student's prescribed medication to that student without an updated Student Medical Authorization form from the student's parent.

27. Though allegedly failing to have the updated form was a technical violation of District policy, Rebecca had the verbal approval from the parent to dispense the medication to the child, and her actions were taken solely in attempt to ensure that the child continued to receive their prescribed medication in a timely manner.

28. Principal Roundtree conducted an internal investigation into the medication incident. Roundtree determined that since there had been no injuries and no willful or intentional violation of policy, Roundtree recommended that Rebecca be given a written reprimand for the incident, in keeping with District policies and procedures.

29. District Administration rejected Roundtree's assessment and instead issued Rebecca a five-day unpaid suspension.

30. Roundtree stated that the severity of Rebecca's punishment was due to Rebecca's sexual orientation (Exhibit J). Roundtree additionally expressed his belief that District Administration sought to retaliate against Rebecca after Diana spoke out against the District Administration at the September 26, 2023 School Board Meeting. *Id.*

31. In December of 2023, Roundtree was advised by Dr. Laura Taylor that Dr. Boozer and Kleber

were intending to transfer Rebecca from her Assistant Principal position at BTW. Taylor told Roundtree that "the decision had been made" by Administration, even though the matter had not been discussed with Rebecca, and a formal Board vote had not taken place approving the transfer.

32. Roundtree expressed his belief that the discussions regarding Rebecca's transfer were due to her sexual orientation, as well as her relationship with Diana following Diana's public comments.

33. In March of 2024, Rebecca was contacted by the District's secretary who informed her that Dr. Boozer wanted to meet with Rebecca over Spring Break. Rebecca was not provided with any reason for the meeting and was not allowed to have anyone attend the meeting with her.

34. On March 11, 2024, Rebecca filed a Charge of Discrimination with the Illinois Department of Human Rights (IDHR Control #24M0312.02) alleging that she had been discriminated against on the basis of her sexual orientation regarding the five-day suspension she received in December 2023. (Exhibit A) Rebecca copied Dr. Boozer, Ken Kleber, Dr. Taylor, and District legal counsel on the correspondence to IDHR.

35. On March 13, 2024, Rebecca met with Dr. Boozer, Kleber, and Dr. Taylor (present via phone). Rebecca was told that she would be transferred to Kenwood Elementary School on March 18, 2024, to finish out the 2023-2024 school year.

36. During the meeting, Dr. Boozer told Rebecca there was "an issue with [her] wife" which had started "when [her] wife came over [to BTW]." Dr. Boozer further stated that she was "not sure" whether Rebecca would have a position as an Assistant Principal with the District the following school year.

37. Dr. Boozer's comments during this meeting came less than 48 hours after Rebecca had filed

her Charge of Discrimination against the District.

38. Rebecca's attorney, Ronald Langacker ("Langacker"), emailed Dr. Boozer later that day, noting that "the fact that Ms. Ramey's relationship with her spouse was broached at the meeting at all, let alone as an apparent justification for the transfer, is frankly shocking." Langacker stated that the District's actions appeared "punitive and retaliatory." (Exhibit K).

39. During the entire remainder of the 2023-2024 school year, the School Board did not address the issue of Rebecca's transfer, and the transfer was never approved by the School Board.

40. On July 25, 2024, without having been notified where she would be assigned with only two weeks left until the start of the 2024-2025 school year, Rebecca considered herself to have been constructively discharged by the District (Exhibit L).

## COUNT I
### (Illinois Human Rights Act—Sexual Orientation)
### (Champaign Unit 4)

41. Plaintiff repeats and re-alleges the previous paragraphs in this First Amended Complaint as if fully set forth herein.

42. Plaintiff is a member of a protected class as that term is defined by 775 ILCS 5/1-103, as it relates to her sexual orientation.

43. Plaintiff met and exceeded the reasonable expectations of her employment.

44. Plaintiff experienced discrimination and suffered an adverse action from the School District when she was given a 5-day unpaid suspension due to her sexual orientation.

45. Plaintiff suffered an adverse action when the District made the decision to transfer Plaintiff to another school as a result of her sexual orientation, and suffered a further adverse action on July 25, 2024, when she was constructively discharged from her employment.

46. Other employees who do not identify with the LGBTQ+ community were not discriminated against or constructively discharged by Defendants.

47. As a direct and proximate result of one or more of the above acts of retaliation, Plaintiff has sustained monetary damages, damage to her professional reputation, emotional distress, and is entitled to compensatory damages, punitive damages, as well as attorneys' fees and costs.

<u>**COUNT II**</u>
**(Title VII—Sexual Orientation)**
**(Champaign Unit 4)**

48. Plaintiff repeats and re-alleges the previous paragraphs in this First Amended Complaint as if fully set forth herein.

49. Plaintiff is a protected party under Title VII (Civil Rights Act of 1964, Section 701 *et seq*., 42 U.S.C.A. 2000e *et seq*.) due to her sexual orientation.

50. Plaintiff met and exceeded the reasonable expectations of her employment.

51. Plaintiff experienced discrimination and suffered an adverse action from the School District when she was given a 5-day unpaid suspension due to her sexual orientation.

52. Plaintiff suffered a further adverse action when the District made the decision to transfer Plaintiff due to her sexual orientation, and suffered a further adverse action as on July 25, 2024 as she was constructively discharged her from her employment.

53. Other employees who do not identify with the LGBTQ+ community were not discriminated against or constructively discharged by Defendants.

54. As a direct and proximate result of one or more of the above acts, Plaintiff has sustained monetary damages, damage to her professional reputation, emotional distress, and is entitled to compensatory damages, punitive damages, as well as attorneys' fees and costs.

## COUNT III
### (Illinois Human Rights Act—Marital Status)
### (Champaign Unit 4)

55. Plaintiff repeats and re-alleges the previous paragraphs in this First Amended Complaint as if fully set forth herein.

56. Plaintiff is a protected party as defined by 775 ILCS 5/1-103, due to her marital status.

57. Plaintiff met and exceeded the reasonable expectations of her employment.

58. Plaintiff experienced discrimination and suffered an adverse action when she was given a 5-day unpaid suspension by the School District due to her marital status.

59. Plaintiff suffered an adverse action on March 13, 2024 when the District made the decision to transfer Plaintiff due to her marital status.

60. Plaintiff suffered a further adverse action on July 24, 2024 when she was constructively discharged from her employment.

61. Other employees who were not in the same protected class as the Plaintiff were treated more favorably by the Defendant.

62. As a direct and proximate result of one or more of the above acts, Plaintiff has sustained monetary damages, damage to her professional reputation, emotional distress, and is entitled to compensatory damages, punitive damages, as well as attorneys' fees and costs.

## COUNT IV
### (Illinois Human Rights Act—Retaliation)
### (Champaign Unit 4)

63. Plaintiff repeats and re-alleges the previous paragraphs of the First Amended Complaint as if fully set forth herein.

64. The Illinois Human Rights Act ("IHRA") forbids retaliation against anyone who has opposed any practice made an unlawful employment practice as defined by the IHRA, or

because he or she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing. 775 ILCS 5/6-101.

65. Moreover, it is a civil rights violation to retaliate against a person because he or she has opposed that which he or she reasonably and in good faith believes to be unlawful discrimination, sexual harassment in employment or sexual harassment in elementary, secondary, and higher education, discrimination based on citizenship status in employment, 775 ILCS 5/6-101.

66. Plaintiff engaged in a protected activity pursuant to Section 6-101(A) of the Act as outlined above, when she filed the Charge of Discrimination on March 11, 2024.

67. Champaign Unit 4 School District was aware that Plaintiff had engaged in protected activity on March 11, 2024.

68. Plaintiff suffered a materially adverse employment action as she was transferred to another elementary school within the District only 48 hours after filing a Charge of Discrimination with the Illinois Department of Human Rights.

69. Plaintiff suffered a further materially adverse employment action when on July 24, 2024, she was constructively discharged from her employment.

70. A reasonable employee would have found the above actions materially adverse, as the District's action would have dissuaded a reasonable person from making or supporting a charge of discrimination.

71. A causal connection exists between Plaintiff's protected activity and the adverse employment actions of Defendants.

72. Any rational from the District for transferring Plaintiff is pretextual.

73. As a direct and proximate result of one or more of the above acts, Plaintiff has sustained monetary damages, damage to her professional reputation, emotional distress, and is entitled to compensatory damages, punitive damages, as well as attorneys' fees and costs.

**COUNT V**
**(Title VII – Retaliation)**
**(Champaign Unit 4)**

74. Plaintiff repeats and re-alleges the previous paragraphs of the First Amended Complaint as if fully set forth herein.

75. Title VII of the Civil Rights Act forbids retaliation against anyone who has opposed any practice made an unlawful employment practice by Title VII or because he or she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing. 42 U.S.C.A. § 2000e-3(a).

76. Moreover, it is a civil rights violation to retaliate against a person because he or she has opposed that which he or she reasonably and in good faith believes to be unlawful discrimination, sexual harassment in employment or sexual harassment in elementary, secondary, and higher education, discrimination based on citizenship status in employment, 42 U.S.C.A. § 2000e-3(a).

77. Plaintiff engaged in a protected activity pursuant to 42 U.S.C.A. § 2000e-3(a) when she filed a Charge of Discrimination on March 11, 2024, as described above.

78. Champaign Unit 4 School District was aware that Plaintiff had engaged in protected activity on March 11, 2024.

79. Plaintiff suffered a materially adverse employment action by Defendant as two days after she filed the Charge of Discrimination, she was immediately transferred to another elementary school within the District.

80. Plaintiff further suffered a materially adverse employment action when on July 24, 2024, she was constructively discharged from her employment.

81. A reasonable employee would have found the above actions materially adverse, as the District's action would have dissuaded a reasonable person from making or supporting a charge of discrimination.

82. A causal connection exists between Plaintiff's protected activity and the adverse employment actions of Defendants.

83. That any rationale from the District for transferring the Plaintiff is pretextual.

84. As a direct and proximate result of one or more of the above acts, Plaintiff has sustained monetary damages, damage to her professional reputation, emotional distress, and is entitled to compensatory damages, punitive damages, as well as attorneys' fees and costs.

**COUNT VI**
**(42 U.S.C. § 1983 Violation of First and Fourteenth Amendment)**
**(Individual Defendants)**

85.  Plaintiff repeats and re-alleges all paragraphs in this First Amended Complaint as if fully set forth herein.

86. Plaintiff brings her familial association claim under the First Amendment, or in the alternative, the due process clause to the Fourteenth Amendment.

87. At all times relevant hereto, Defendants Boozer, Kleber, and Taylor acted as agents, employees, supervisors, and final policymakers for the Champaign Community Unit #4 School District.

88. The conduct of Defendants was and became the custom and practice of Defendants.

89. Plaintiff has a liberty right to have intimate human relationships with her wife (right to "familial association"). Plaintiff is further entitled to the right to freedom of association under

the First Amendment to the United States Constitution.

90. As described above, Plaintiff's spouse engaged in activity protected by the First Amendment when she made comments critical of the District's administration on September 26, 2023.

91. Plaintiff's spouse's speech involved a matter of public concern.

92. Plaintiff was deprived of her right to familial association when Defendants retaliated and conspired to retaliate against Plaintiff because of her association with her wife, Diana Kistler Ramey.

93. Plaintiff suffered a deprivation likely to deter speech, including, but not limited to, being given a five-day suspension without pay, transferring Plaintiff abruptly to another elementary school within the District, and ultimately constructively discharging Plaintiff on July 25, 2024.

94. The individual Defendants intentionally retaliated against Plaintiff with malice or reckless indifference to Plaintiff's rights of freedom of speech.

95. Defendants' actions constituted an unwarranted and undue interference into Plaintiff's family relationships, and an unconstitutional infringement upon Plaintiff's due process and/or First Amendment right to familial association.

96. The actions of Defendants against Plaintiff violate his due process right to be free from retaliation because of his association with her wife under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

97. The actions of Defendants against Plaintiff violate Plaintiff's right to be free from retaliation because of her association with her wife under the First Amendment of the United States Constitution and 42 U.S.C. § 1983.

98. The conduct of Defendants violated Plaintiff's right to familial association as provided by

the First and Fourteenth Amendment to the Constitution.

99. Defendants intentionally retaliated against Plaintiff with malice or reckless indifference to Plaintiff's civil rights, thereby entitling Plaintiff to punitive damages.

100. As a direct and proximate result of one or more of the above acts, Plaintiff has sustained monetary damages, damage to her professional reputation, emotional distress, and is entitled to compensatory damages, punitive damages, as well as attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Rebecca Kistler Ramey, respectfully requests that this Court enter the following relief:

A.  Award Plaintiff damages sufficient to compensate her for any economic losses suffered as a result of conduct alleged in the First Amended Complaint;

B.  Assess against Defendants all incidental and consequential damages, the costs and expenses incurred by Plaintiff in maintaining the above-captioned proceedings together with reasonable attorney's fees incurred by Plaintiff in prosecuting the above-captioned case;

C.  Award against Defendants and in favor of Plaintiff such compensatory and exemplary damages as may be permitted by law;

D.  Enter a declaratory judgment determining that the actions complained of in this First Amended Complaint are unlawful and in violation of the provisions of state and federal law, and issue a mandatory injunction against Defendants to refrain from engaging in any actions with respect to Plaintiff which are prohibited under the terms of the foregoing laws;

E.  Issue a mandatory injunction directing Defendants to reinstate Plaintiff to the position of employment which she held prior to the conduct complained of in this First Amended Complaint with all employment duties, responsibilities, salaries, benefits and rights

attendant to that position;

F.  Award punitive damages as permitted by law, and against the Defendants in their individual

capacities, (See *Minix v. Canarecci*, 597 F.3d 824, 830 (7th Cir. 2010; *Bosco v. Serhant*,

836 F.2d 271, 281 (7th Cir.1987); and

G.  For all further relief the Court deems equitable and just.

PLAINTIFF DEMANDS TRIAL BY JURY.

Ronald S. Langacker, #6239469         REBECCA KISTLER RAMEY
Langacker Law, Ltd.                     PLAINTIFF
210 N. Broadway
Urbana, Illinois 61801             By: /s/Ronald S. Langacker
(217) 954-1025                    Ronald S. Langacker
ron@langackerlaw.com           Attorney for Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| **REBECCA KISTLER RAMEY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) |
| | ) **Case No. 2:24-cv-2194** |
| **BOARD OF EDUCATION OF** | ) |
| **CHAMPAIGN UNIT 4 SCHOOL** | ) |
| **DISTRICT; Dr. SHELIA E. BOOZER, in her** | ) |
| **Individual Capacity;  KENNETH L.** | ) |
| **KLEBER, in his Individual Capacity; and Dr.** | ) |
| **LAURA TAYLOR, in her Individual** | ) |
| **Capacity;** | ) |
| | ) |
| **Defendants.** | ) |

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney of record hereby certifies that on March 31, 2025, he electronically filed the foregoing **First Amended Complaint** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Caroline K. Kane (ARDC No. 6324144)
ckk@franczek.com
Tracey L. Truesdale (ARDC No. 6207891)
tlt@franczek.com
Hailey M. Golds (ARDC No. 6312907)
hmg@franczek.com
Franczek P.C.
300 South Wacker Drive, Suite 3400
Chicago, IL 60606
(312) 986-0300

Ronald S. Langacker, #6239469
Langacker Law, Ltd.
210 N. Broadway Ave.
Urbana, Illinois 61801
(217) 954-1025
ron@langackerlaw.com